641 So.2d 1362 (1994)
Harold Leonard GRINAGE, Appellant,
v.
STATE of Florida, Appellee.
No. 93-1583.
District Court of Appeal of Florida, Fifth District.
August 19, 1994.
*1363 James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Wesley Heidt, Asst. Atty. Gen., Daytona Beach, for appellee.
HARRIS, Chief Judge.
Harold Leonard Grinage (Grinage) appeals his judgment and sentence for "attempted first degree felony murder of a law enforcement officer" and attempted robbery with a deadly weapon. We reverse his conviction on the attempted murder charge and affirm his conviction for attempted robbery, but remand for resentencing on that charge since the score sheet will dramatically change.
Deputy Boaz, the State's primary witness, testified that he had arranged to make an undercover purchase of cocaine from Grinage in a shopping center parking lot. Boaz said he was sitting alone in his car when Grinage got into the car from the passenger side. Grinage asked to see the money, and Boaz complied. Grinage, instead of producing any cocaine, suddenly pulled a knife and Boaz was "stabbed" in the hand "when I caught the knife the first time." Boaz suffered a hand would before Grinage was subdued by the backup team.
Grinage, who admitted the attempted armed robbery, maintained that he had never tried to kill Boaz. He claimed that he pulled the knife out to scare Boaz into giving him the cash, but stated that he never held the knife to Boaz's throat or thrust it towards his chest. It seems clear that Grinage did not know Boaz was a policeman.
Grinage moved for a judgment of acquittal and, although the trial judge observed that, "The physical evidence, such as it was, more closely matched [Grinage's] version of the events," she concluded the evidence was adequate to go to the jury. And even though substantial evidence impeaching Boaz' credibility, including testimony from his own supervisor, was offered, the jury convicted.
Several issues are raised on appeal, only one of which warrants discussion. Grinage made the argument that the jury instruction on "attempted first degree felony murder of a law enforcement officer"[1] was inadequate:

*1364 Furthermore, the verdict is contrary to the law in that the jury instructions given as to count one, incorporating the State's proposed jury instruction number one, advised the jury that the State did not have to prove the Defendant had a premeditated design or intent to kill, nor did the State have to prove that the Defendant knew that Kelly Boaz was a law enforcement officer. The Defendant would submit that the jury was then left with the legal impression that all they had to do was find that the Defendant, Harold Grinage, did "some act" during the perpetration or attempted perpetration of a robbery in order to be found guilty of Attempted First Degree Felony Murder of a Law Enforcement Officer, "some act," being undefined, vague, overbroad and ambiguous, thus leaving the jury to speculate and conjecture.
We agree that the instructions given below were inadequate and require reversal. We further hold that upon retrial, merely giving the newly approved instructions (instructions that still omit the requirement of intent and the requirement of knowledge of the status of the victim) will not be sufficient to justify the conviction for unknowingly attempting to murder a police officer engaged in the performance of his duty.
Grinage urges, and we agree, that before he can be convicted of attempting to murder a police officer engaged in the lawful performance of his duty, the State must allege and prove that he knew his victim was a police officer. The State argues, however, that since section 784.07(3) is silent as to the requirement of mens rea, then the defendant's knowledge of the victim's status is immaterial. Admittedly, this was basically the holding in Carpentier v. State, 587 So.2d 1355 (Fla. 1st DCA 1991).
Further, the State's position on statutory silence is consistent with State v. Medlin, 273 So.2d 394, 396 (Fla. 1973);
The Florida cases set out the rule that where a statute denounces the doing of an act as criminal without specifically requiring criminal intent, it is not necessary for the State to prove that the commission of such act was accompanied by criminal intent.
Medlin relied on La Russa v. State, 142 Fla. 504, 509, 196 So. 302, 304 (1940), which held:
It is well settled that as a general rule, acts prohibited by statute (statutory as distinguished from common law crimes) need not be accompanied by a criminal intent, unless such intent be specifically required by the statute itself, as the doing of the act furnishes such intent.[2]
*1365 However, we find that section 784.07(3) is not silent as to the requirement of mens rea.
Section 784.07(3) is a subsection of a section entitled "Assault or battery of law enforcement officers ...; reclassification of offenses." The purpose of this section is to enhance the penalty for certain offenses against law enforcement officers (and other designated officers) when such offenses are committed while the officers are engaged in their official duties. In subsection (2), the statute increases the penalties for assault, battery, aggravated assault and aggravated battery against such officer if the defendant knows of his or her status as an officer.
While the "knowingly committing" language is not repeated in subsection (3), it is replaced by the legally equivalent word "attempted." As Justice Overton observed in his dissenting opinion in Amlotte v. State, 456 So.2d 448, 450 (Fla. 1984), "A conviction for the offense of attempt has always required proof of the intent to commit the underlying crime." Here the underlying crime is "the murder of a police officer engaged in the lawful performance of his duty." How could Grinage have intended to murder (felony or otherwise) a "law enforcement officer ... engaged in the lawful performance of his duty," if he did not know that Boaz was, in fact, a police officer? We agree that the court erred in instructing the jury that the State was not required to prove such knowledge.
Had the State charged Grinage with the offense of attempted murder under section 784.07(3),[3] intent to commit the murder and knowledge that the victim was a police officer would, we think, be necessary elements. The State urges that it can avoid proving these elements by merely alleging that the attempted murder of a police officer engaged in the performance of his duty took place during a robbery and citing the felony murder statute.
Admittedly, the supreme court majority in Amlotte held that attempted felony murder is recognized in Florida.[4] But the supreme court has not yet determined that the concept of felony murder can carry not only the offense of attempted murder but will also justify a conviction for the unknowing specific attempt to murder a police officer engaged in the lawful performance of his duty. That is the issue before us. In Fleming v. State, 374 So.2d 954 (Fla. 1979), the supreme court held that the accidental shooting of a known police officer justified a plea to attempted felony murder because the attempt was committed during a felony and, therefore, premeditation was presumed. But to go further and presume that because the attempt was made during the commission of an attempted robbery of an undercover officer in a sting operation, the defendant will be presumed not only to have intended a killing but also to know that the undercover agent was a police officer is stacking presumption on top of presumption.
We hold that section 782.04(1)(a)2 is not the proper vehicle for charging a section 784.07(3) attempted murder of a law enforcement officer engaged in the lawful performance of his duty. Because it may be argued that Amlotte is broad enough to encompass this offense, we certify this issue to the supreme court.
Even if the felony murder rule is held to be a proper way to charge attempted murder of a police officer engaged in the lawful performance of his duty, it was not appropriate in this case. The overt act relied on by the State to justify the attempted murder charge is the knife "thrust ... toward the chest or throat area of Kelly Boaz." *1366 But this "overt act" is the only alleged act of force, violence or assault to prove a necessary element of the underlying qualifying offense of robbery. If "force, violence or assault" is not present during the course of the taking, then there is no robbery. Can an essential element of the underlying qualifying offense also constitute the "overt act" required to prove attempted murder? If so, then practically every robbery will justify an attempted murder charge. Although Fleming dealt with an underlying robbery charge, the overt act there was not the violence that occurred during the taking but the shooting that occurred later during the getaway attempt. The accidental shooting of the police officer, although committed during the course of the robbery (the getaway) was a separate act of violence not necessary to prove the robbery. In Amlotte, the underlying offense was burglary so that the shooting into the residence was not an essential element necessary to prove the underlying qualifying felony. We hold, until the supreme court decides otherwise, that an essential element of the underlying qualifying felony cannot also serve as the overt act necessary to prove attempted murder.
Finally, the information in this case alleged that Grinage:
Attempted to murder Kelly Boaz, a law enforcement officer ... engaged in the lawful performance of his duty ... and in furtherance of said attempt . .. did grab Kelly Boaz around the neck and did thrust a knife toward the chest or throat area of Kelly Boaz, an act which could have caused the death of Kelly Boaz, and which act occurred during the perpetration of an attempted robbery.
The above charge, without the additional allegation that Grinage intended to murder Boaz, charges nothing more than an aggravated assault (section 784.021) of a police officer engaged in the performance of his duty (section 784.07(2)(c)) committed as a part of an attempted robbery.
An aggravated assault is defined as an assault either with a deadly weapon without an intent to kill or an assault with an intent to commit a felony. Here, Grinage is alleged to have used a knife (deadly weapon) while intending to commit a felony (robbery).
Although this aggravated assault allegation is coupled with the additional allegation that the victim was a police officer engaged in the lawful performance of his duty, this does nothing more than bring the offense within the ambit of section 784.07(2)(c) which enhances the penalty for the aggravated assault of a police officer engaged in the lawful performance of his duty. But this section additionally requires that the defendant know that the victim is a police officer.
We hold that the State cannot transform the offense of aggravated assault on a police officer engaged in the lawful performance of his duty into attempted murder by merely alleging that since the assault took place as a part of a robbery attempt, it constitutes an "attempted felony murder."
Some criminal offenses (and we urge that first degree felony murder is one) simply were not intended by the legislature to support a conviction for their attempted commission. Section 782.04(1)(a)2, by its terms, contemplates a body  a completed act of homicide. Under this statute, the malice aforethought (intent) "is supplied by the felony, and in this manner the rule is regarded as a constructive malice device." Adams v. State, 341 So.2d 765 (Fla. 1977). This conclusion is apparently based on the premise (perhaps legal fiction) that since one is presumed to intend the consequences of his acts, if a death occurs as a result of his intentional commission or attempted commission of a qualifying felony, he must have intended (and the law will presume such intent) the death of the victim. But where is the logic if there is no body? If we have a frightened or injured victim as a result of the commission or attempted commission of a felony, why should not the law presume that such was the intent of the offender? Why should the law presume an intent to murder when there is no death merely because the assault occurs during the commission or attempted commission of a felony?
We recognize that parts of this analysis may be contrary to the majority opinion in Amlotte, but we believe it to have been invited *1367 by the supreme court's comment in Standard Jury Instruction, 19 Fla. L. Weekly S244 (Fla. May 5, 1994). There, the court said in a note to its opinion approving a new instruction on attempted murder and manslaughter:[5]
The committee noted that it had great difficulty in drafting an instruction on attempted felony murder which incorporated the language of Amlotte v. State, 456 So.2d 448 (Fla. 1984). In fact, the committee observed that a majority of its members were persuaded by the dissenting opinion in that case that there could be no such crime as attempted felony murder. Recognizing, however, that its function was not to change existing law, the committee submitted a proposed instruction for that crime.
Unlike the instruction committee, it is our responsibility (while not reversing the supreme court) to point out to the court new or additional arguments that should be considered by it in determining whether questioned law should remain in effect. In that regard, we certify to the supreme court the following questions:
1. IS SECTION 782.04(1)(a)2 A PROPER VEHICLE FOR FILING A CHARGE OF ATTEMPTED MURDER OF A POLICE OFFICER ENGAGED IN THE LAWFUL PERFORMANCE OF HIS DUTY?
2. IF SO, CAN THE PROOF OF A NECESSARY ELEMENT OF THE UNDERLYING QUALIFYING FELONY ALSO CONSTITUTE THE OVERT ACT NECESSARY TO PROVE THE ATTEMPTED (FELONY) MURDER OF A LAW ENFORCEMENT OFFICER ENGAGED IN THE LAWFUL PERFORMANCE OF HIS DUTY?
3. IF SECTION 782.04(1)(a)2 IS AN APPROPRIATE VEHICLE FOR THE CHARGE AND IF AN ESSENTIAL ELEMENT CAN ALSO SERVE AS THE NECESSARY OVERT ACT, ARE ALLEGATIONS IN THE INFORMATION WHICH MERELY ALLEGE THE OFFENSE OF AGGRAVATED ASSAULT OF A POLICE OFFICER ENGAGED IN THE LAWFUL PERFORMANCE OF HIS DUTIES, WHICH ASSAULT TOOK PLACE DURING AN ATTEMPTED ROBBERY, SUFFICIENT TO SUSTAIN A CONVICTION FOR FIRST-DEGREE FELONY MURDER?
REVERSED in part; AFFIRMED in part and REMANDED for resentencing.
DAUSKCH, J., concurs.
GRIFFIN, J., concurs specially and dissents with opinion.
GRIFFIN, Judge, concurring in part; dissenting in part.
I will leave the majority opinion to the supreme court; they'll either like it or they won't and they're the ones with power to change their precedents.
I would give the defendant a new trial because the jury instruction on "attempted first degree felony murder of a law enforcement officer" was fatally flawed.
The instruction given was as follows:
In order to prove that defendant attempted to commit the crime of First Degree Felony Murder of a Law Enforcement Officer, the state must prove the following beyond a reasonable doubt:
1. Harold Grinage did some act toward committing the crime of First Degree Felony Murder of a Law Enforcement Officer that went beyond just thinking or talking about it.
2. He would have committed the crime except that someone prevented him from committing the crime of First Degree Felony Murder of a law Enforcement Officer, or he failed.
*1368 3. Kelly Boaz was a law enforcement officer.
It is not an attempt to commit First Degree Felony Murder of a Law Enforcement Officer if the defendant abandoned his attempt to commit the offense or otherwise prevented its commission, under circumstances indicating a complete and voluntary renunciation of his criminal purpose.
First Degree Felony Murder is the unlawful killing of a human being when committed by a person engaged in the perpetration of, or in the attempt to perpetrate, a robbery. In order to convict of First Degree Felony Murder, it is not necessary for the State to prove the Defendant had a premeditated design or intent to kill.
Robbery will be defined for you later.
It is not necessary for the State to prove that Harold Grinage knew that Kelly Boaz was a law enforcement officer. As expressed below by appellant:
Furthermore, the verdict is contrary to the law in that the jury instructions given as to count one, incorporating the State's proposed jury instruction number one, advised the jury that the State did not have to prove the Defendant had a premeditated design or intent to kill, nor did the State have to prove that the Defendant knew that Kelly Boaz was a law enforcement officer. The Defendant would submit that the jury was then left with the legal impression that all they had to do was find that the Defendant, Harold Grinage, did "some act" during the perpetration or attempted perpetration of a robbery in order to be found guilty of Attempted First Degree Felony Murder of a Law Enforcement Officer, "some act," being undefined, vague, overbroad and ambiguous, thus leaving the jury to speculate and conjecture.
This instruction appears to be a combination of the standard instruction on "attempt,"[1] the statutory definition of felony murder,[2] and the case law interpreting section 784.07(3), Florida Statutes, which requires an enhanced penalty for a person convicted of "attempted murder of a law enforcement officer." Isaac v. State, 626 So.2d 1082 (Fla. 1st DCA 1993), review denied, 634 So.2d 624 (Fla. 1994); Carpentier v. State, 587 So.2d 1355 (Fla. 1st DCA 1991), review denied, 599 So.2d 654 (Fla. 1992). Although the lower court did the best it could to fashion an adequate jury instruction on attempted felony murder (an effort in which defense counsel appears on this record to have been utterly uninterested), the instruction given was so defective that the defendant was deprived of a fair trial.[3]
The problem is that the instruction, as given, cannot be understood and cannot be applied by a jury in a manner consistent with Amlotte v. State, 456 So.2d 448 (Fla. 1984). The Florida Supreme Court's newly adopted jury instruction on attempted first-degree felony murder brings into relief the flaws in the instruction given below. Standard Jury Instructions in Criminal Cases (93-1), 636 So.2d 502 (Fla. 1994). As noted by the Supreme Court Committee on Standard Jury Instructions, the offense of attempted felony murder cannot be charged "understandably" using the standard "attempt" instruction. The Florida Supreme Court's order reflects the difficulty of drafting a proper instruction on attempted felony murder even without the added problem of the victim's law enforcement status. The court reported that although a majority of the Committee concluded that the crime for which they were charged with writing a jury instruction did not exist, by using the language from Amlotte, they were able to fashion an instruction that the court has approved.
We now know, in light of the committee's work, that in order to meet the requirements of Amlotte, the instruction for attempted first-degree felony murder must contain two discrete elements, which are set forth in the new instruction:
Before you can find the defendant guilty of Attempted First Degree Felony Murder, the State must prove the following two elements beyond a reasonable doubt:

*1369 1. a. [(Defendant) did some overt act, which could have caused the death of (victim), but did not.]
* * * * * *
2. The act was committed as a consequence of and while
a. [the defendant was engaged in the commission of (crime alleged).]
b. [the defendant was attempting to commit (crime alleged).]
* * * * * *
In order to convict of attempted first degree felony murder, it is not necessary for the State to prove that the defendant had a premeditated design or intent to kill.
It is not an attempt to commit first degree felony murder if the [defendant] [person who committed the specific overt act] abandoned the attempt to commit the offense or otherwise prevented its commission under circumstances indicating a complete and voluntary renunciation of [his] [her] criminal purpose.
The first element is a critical component and nothing in the instruction given below was equivalent. See Gray v. State, 19 Fla. L. Weekly, D1039, 1994 WL 176541 (Fla. 3d DCA May 10, 1994).
I do not, however, disagree with the First District Court of Appeal that the state need not prove the defendant knew his victim was a law enforcement officer. It may be that the overall legislative scheme found in sections 775.0823, 775.0825, 782.04(1) and 784.07, Florida Statutes, is odd, but these statutes plainly communicate the legislative scheme for charging, proving and punishing the attempted murder of a law enforcement officer. When the language of a Florida statute is plain, it must be followed. State v. Jett 626 So.2d 691 (Fla. 1993).
NOTES
[1] The instruction given was as follows:

In order to prove that defendant attempted to commit the crime of First Degree Felony Murder of a Law Enforcement Officer, the state must prove the following beyond a reasonable doubt:
1. Harold Grinage did some act toward committing the crime of First Degree Felony Murder of a Law Enforcement Officer that went beyond just thinking or talking about it.
2. He would have committed the crime except that someone prevented him from committing the crime of First Degree Felony Murder of a law Enforcement Officer, or he failed.
3. Kelly Boaz was a law enforcement officer.
It is not an attempt to commit First Degree Felony Murder of a Law Enforcement Officer if the defendant abandoned his attempt to commit the offense or otherwise prevented its commission, under circumstances indicating a complete and voluntary renunciation of his criminal purpose.
First Degree Felony Murder is the unlawful killing of a human being when committed by a person engaged in the perpetration of, or in the attempt to perpetrate, a robbery. In order to convict of First Degree Felony Murder, it is not necessary for the State to prove the Defendant had a premeditated design or intent to kill.
Robbery will be defined for you later.
It is not necessary for the State to prove that Harold Grinage knew that Kelly Boaz was a law enforcement officer.
[2] It should be noted that this statutory construction is inconsistent with Staples v. United States, ___ U.S. ___, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994).

As we observed in Liparota v. United States, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." ... Thus, we have long recognized that determining the mental state required for commission of a federal crime requires "construction of the statute and ... inference of the intent of Congress." ...
The language of the statute, the starting place in our inquiry ... provides little explicit guidance in this case. Section 5861(d) is silent concerning the mens rea required for a violation... . Nevertheless, silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional mens rea element, which would require that the defendant know the facts that make his conduct illegal. See [U.S. v.] Balint, [258 U.S. 250], supra, at 251, 42 S.Ct. [301], at 302 [66 L.Ed. 604], [(1922)] (stating that traditionally, "scienter" was a necessary element in every crime)... . On the contrary, we must construe the statute in light of the background rules of the common law ... in which the requirement of some Mens rea for a crime is firmly embedded. As we have observed, "[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Id. [United States v. United States Gypsum Company, 438 U.S. 422] at 436, 98 S.Ct. [2864], at 2873 [57 L.Ed.2d 854] [(1978)] ... See also Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952) ("The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil").
There can be no doubt that this established concept has influenced our interpretation of criminal statutes. Indeed, we have noted that the common law rule requiring mens rea has been "followed in regard to statutory crimes even when the statutory definition did not in terms include it." ... Relying on the strength of the traditional rule, we have stated that offenses that require no mens rea generally are disfavored ... and have suggested that some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime.
Staples, ___ U.S. at ___-___, 114 S.Ct. at 1796-1797.
[3] Assuming that section 784.07(3) creates a new substantive offense. See Carpentier v. State, 587 So.2d 1355 (Fla. 1st DCA 1991).
[4] But see section 921.0012 (the offense severity ranking chart) which reflects that the legislature may not recognize attempted felony murder as an offense.
[5] We also mention by way of footnote (because there was no objection) that the trial court also failed to give the Introduction to Homicide charge required in all murder and manslaughter cases. Although this instruction has now been replaced by an Introduction to Attempted Homicide instruction, the requirement to define murder by defining homicide and then eliminating justifiable and excusable homicide and distinguishing between degrees of murder and manslaughter remains. In our case, there was no effort to define murder (or now attempted murder).
[1] Fla.Stand.Jury Instr. (Crim.) 1062.
[2] § 782.04(1)(a), Fla. Stat. (1991).
[3] Ray v. State, 403 So.2d 956, 960 (Fla. 1981).