**Henry PEREZ, Petitioner,**

v.

**DEPT. OF CORRECTIONS,**
**Respondent.**

**No. 98–2708–CIV.**

United States District Court,
S.D. Florida.

Sept. 30, 2002.

Timothy Cone, Federal Public Defender's Office, Fort Lauderdale, FL, for plaintiff.

Henry Perez, Jefferson Correctional Institution, Monticello, FL, pro se.

Linda S. Katz, Attorney General Office, Dept. of Legal Affairs, Miami, FL, for defendant.

## *ORDER*

GRAHAM, District Judge.

**THIS CAUSE** comes before the Court upon the Petition for Writ of Habeas Corpus (D.E.1).

**THE COURT** has considered the Petition, the pertinent portions of the record, and is otherwise duly advised in the premises.

**THIS MATTER** was referred to United States Magistrate Judge Charlene H. Sorrentino for a Report and Recommendation. On December 19, 2001, following an evidentiary hearing, Magistrate Judge Sorrentino entered a Report, recommending that the Petition be denied.

Petitioner, Henry Perez, objects to the portions of the December 19, 2001 Report and Recommendation of Magistrate Judge Sorrentino which reject Claims Four and Five of his federal habeas petition. In his

objections, Petitioner abandoned his other habeas claims. Accordingly, the Court herein will address Claim Four, relating to Petitioner's claim of ineffective assistance of appellate counsel, and Claim Five, Petitioner's claim that his conviction for attempted felony murder is unconstitutional.

## I. BACKGROUND

In 1993, Perez was tried and convicted in the Eleventh Judicial Circuit in and for Miami–Dade County, Florida, of a number of charges, the most serious of which was attempted felony murder, which carried a 25–year sentence. *See* D.E. 12, Appendix C & D. The charges arose out of an incident in which Perez was spotted by police smoking crack cocaine in a car with a companion. When a police officer attempted to arrest him, a few seconds' scuffle occurred, Perez put his car in reverse, and the car injured the police officer's leg. After a chase by other officers, Perez was apprehended. D.E. 12, App. E, 8–12.

On September 30, 1993, Perez was sentenced to twenty-five (25) years imprisonment as to Count One (attempted felony murder); five years imprisonment as to Count Two (possession of cocaine); and time served as to Counts Three and Four (possession of drug paraphernalia and possession of cannabis, respectively).

Perez prosecuted a timely appeal. As more fully discussed below, on November 16, 1994, the Third District Court of Appeal affirmed the judgment of conviction and sentence *per curiam* without written opinion, a so-called "PCA" decision. *Perez v. State of Florida*, 645 So.2d 476 (Fla. 3d DCA 1994). The district court's mandate issued on December 2, 1994.

On May 4, 1995, in *State v. Gray*, 654 So.2d 552, 554 (Fla.1995), *aff'g Gray v. State*, 654 So.2d 934 (Fla. 3rd DCA 1994), the Florida Supreme Court abolished the doctrine of attempted felony murder, the crime for which Perez was convicted. The change in the law applied to all cases pending on direct review and not yet final.

Petitioner argues that had he received effective assistance of appellate counsel, his appeal would have been kept "alive," and he would have benefited from the Florida Supreme Court's decision in *Gray*.

### A. Background Concerning Petitioner's Direct Appeal

The Dade County Public Defender's Office represented Perez at trial. After his conviction and sentence, J. Rafael Rodriguez, a private attorney, contracted with the Public Defender's Office to handle Perez's appeal of his conviction as a "specially appointed public defender." Ex. 4, p. 3; Ex. 7, cover.[1] Dade County paid Rodriguez for this work. T. 57.[2] The contract reminded Rodriguez of the short deadline for decisions about further proceedings after a ruling by a district court of appeals, and made Rodriguez responsible for deciding what to do should the appellate court affirm the conviction. Specifically, the contract provided:

> If the decision affirms a conviction and sentence, it will be the private attorney's responsibility to file a motion for rehearing if such motion is necessary.... If rehearing is granted, the private attorney will be responsible for any additional work required on the case....
>
> If no motion for rehearing is filed, the private attorney is to *immediately* re-

---

1. Exhibit references ("Ex.") refer to the exhibits introduced at the October 30, 2001 evidentiary hearing before Magistrate Judge Sorrentino.

2. Transcript references ("T.") refer to pages of the transcript of the October 30, 2001 evidentiary hearing.

turn the case file to the Office of the Public Defender.... Regardless of the nature of the decision of the District Court of Appeal, it is absolutely imperative that the case file be returned at the designated point in the proceedings, as the time periods for seeking discretionary review or mitigation will be running.

See Ex. 4, p. 6. Howard Blumberg, the attorney at the Public Defender's Office who supervised cases contracted out to private attorneys, testified that it was part of Rodriguez' responsibility to inform a client of his "options" in the event of affirmance by the Third District Court of Appeals. T. 26.

At the time Rodriguez represented Petitioner Perez, Rodriguez also happened to be the appellate lawyer in Gray, the case in which the Florida Supreme Court abolished the doctrine of attempted felony murder, thereby overruling the precedent which had judicially created the offense of attempted felony murder. See State v. Gray, 654 So.2d 552, 554 (Fla.1995), aff'g Gray v. State, 654 So.2d 934 (Fla. 3rd DCA 1994).

When Rodriguez began working on Perez's appeal, Gray was pending in the Florida Supreme Court, on the State's appeal of the district court's May 10, 1994 reversal of the attempted felony murder conviction. Ex. 4. The district court's decision in Gray recognized that, under Amlotte v. State, 456 So.2d 448, 449 (Fla.1984), the essential elements of attempted felony murder were the attempt to perpetrate an enumerated felony, together with an overt act "which could, but does not cause the death of another." 654 So.2d at 935. The decision further recognized that, when a person is accused of attempted felony murder, "the law presumes the existence of the specific

intent required to prove attempt." 654 So.2d at 935.

Ultimately, the district court in Gray held that running a red light and colliding with a vehicle "do not constitute overt acts reasonably understood to result in a person's death," and certified an issue of "great public importance": "[w]hether the 'overt act' referred to in Amlotte v. State, 456 So.2d 448, 449 (Fla.1984), includes one, such as fleeing, which is intentionally committed but is not intended to kill or injure another?" 654 So.2d at 936.[3]

On July 29, 1994, just two weeks after Rodriguez filed a responsive brief in the Supreme Court in Gray, (T. 42–43, 56), Rodriguez filed his initial brief in Perez in the Third District Court of Appeal. Rodriguez argued that the evidence was insufficient to support a conviction for attempted felony murder because Perez did not intend to kill or injure anyone. Ex. 7, pp. 18–23. In support of this argument, Rodriguez, in "good faith", cited Gray in his initial and reply briefs. T. 59–60. Significantly, neither brief mentioned that Gray was pending in the Florida Supreme Court to resolve an issue of great public importance. Ex. 7, p. 22; Ex. 8, p. 7.

Rodriguez also argued that proof of the element of a "separate overt act" was missing, because the backing out of Perez's vehicle was said to constitute both an underlying felony (escape) and attempted murder. In his reply brief, Rodriguez cited Grinage v. State, 641 So.2d 1362 (Fla. 5th DCA 1994) in support of this argument. Grinage had been decided on August 19, 1994—just a few weeks before Perez's reply brief was filed on September 12, 1994. Ex. 8, p. 15.

In Grinage, as in Gray, the district court overturned an attempted felony mur-

---

**3.** Certification of an issue of "great public importance" invokes the jurisdiction of the Florida Supreme Court. See Fla. Const. Art. V. § 3(b)(4).

der conviction, and held that use of force, the "overt act" of the underlying felony of robbery, could not "also serve as the overt act necessary to prove attempted murder." 641 So.2d at 1365–66. *Grinage* further questioned why the law should "presume an intent to murder when there is no death merely because the assault occurs during the commission or attempted commission of a felony," and noted that the Supreme Court Jury Instruction Committee shared its views. 641 So.2d at 1366–67 (citing *Standard Jury Instructions in Criminal Cases 93–1*, 636 So.2d 502, 502 n. 1 (Fla. 1994)).

The *Grinage* court added that "it is our responsibility (while not reversing the supreme court) to point out to [this] court new or additional arguments that should be considered by it in determining whether questioned law should remain in effect." *Id.* at 1366–67. It acknowledged that "parts of [its] analysis may be contrary to the majority opinion in *Amlotte*," and certified several questions concerning the scope of the attempted felony murder doctrine as being of "great public importance." *Id.*

In his *Perez* reply brief, Rodriguez did not mention *Grinage*'s criticism of *Amlotte* and of the attempted felony murder doctrine, nor its certification to the Florida Supreme Court of several issues of "great public importance"—including the "separate" act issue on which Perez's appeal specifically relied. *See* Ex. 8, pp. 8–9.

On November 16, 1994, the Third District Court of Appeal affirmed Perez's convictions, without opinion or citation to case law, a so-called "PCA" decision. Ex. 9. The court's mandate was due to issue, and did in fact issue, 15 days later, on December 2, 1994. Ex. 13.

Rodriguez' only communication with his client regarding the PCA decision was a November 17, 1994 letter (Ex. 12):

Enclosed please find the opinion of the Third District Court of Appeal in your case. Unfortunately, your conviction and sentence were affirmed.

Your file has been returned to the Office of the Public Defender. Please do not hesitate to contact their office at 1320 N.W. 14th Street, Miami, Fl 33125 if you have any questions. Thank you for your attention to this matter.

Perez testified that, upon receiving this letter he "was left blind sided [as] to what [he] could do," because he "had no knowledge whatsoever of the law." T. 84. Had Rodriguez informed him of the available options, Perez "positively" would have wanted to keep his case alive. T. 89.

In December 1994, shortly after the mandate issued in *Perez*, Rodriguez *sua sponte* filed a supplemental brief in *Gray*, urging the Florida Supreme Court to overrule *Amlotte*. T. 45.

A few months thereafter, on May 4, 1995, the Supreme Court decided *Gray*, and held that no offense of attempted felony murder existed under the Florida statutes. The Court added that its decision "must [only] be applied to all cases pending on direct review or not yet final." *State v. Gray*, 654 So.2d 552, 554 (Fla. 1995).[4]

Perez did not learn of the Supreme Court's *Gray* decision from Rodriguez, but from a fellow inmate. T. 86. On May 9, 1995, Perez filed a motion for rehearing and notice of supplemental authority in the Third District Court of Appeal, attaching a copy of the Florida Supreme Court's decision in *State of Florida v. Gray*, 654 So.2d at 553 (Fla.1995). In his motion, Petition-

---

4. Two weeks later, the Supreme Court affirmed the reversal of the conviction in *Gri-* *nage*, citing its reversal of *Amlotte* in *Gray*. *State v. Grinage*, 656 So.2d 457 (Fla.1995).

er claimed that his case was a "pipeline" case, and that it was not "his fault" that his conviction was affirmed prior to the Supreme Court's ruling in *Gray*. D.E. 12, Ex. I.

The Court of Appeal treated that motion as a state petition for habeas corpus, and required the state to file a response. D.E. 12, Ex. J. The State opposed the motion, noting that the Supreme Court limited *Gray* to cases that were "not yet final," and that Perez's case was final.

In his reply, Petitioner clarified that his claim was one for ineffective assistance of appellate counsel, and argued that had his counsel adequately protected his rights on appeal, he would have remained in the "pipeline" and would have benefitted from the Supreme Court's decision in *Gray*. D.E. 12, Ex. L. The court treated Perez's motion for rehearing as a habeas petition, and denied relief, without opinion. *Perez v. State*, 664 So.2d 257 (Fla. 3rd DCA 1995).

Separately, Perez filed several motions for post-conviction relief before the trial court, raising many of the same claims raised in his federal petition. *See* D.E. 12, Ex. O–W; Report, at 6. The last of the motions was summarily denied by the state trial court on February 14, 1997. D.E. 12, Ex. V. Perez appealed the denial of his motion for post-conviction relief, and the Third District Court of Appeal *per curiam* affirmed without written opinion. *See Perez v. State of Florida*, 725 So.2d 1128 (Fla. 3d DCA 1998)(table); D.E. 12, Ex. X–Y. Rehearing was denied, and the mandate issued on November 13, 1998. D.E. 12, Ex. Z.

## B. *Background Concerning the Federal Habeas Proceedings*

Perez filed his federal petition on November 3, 1998. In its initial response, respondent argued that the petition was time-barred under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d). The Magistrate Judge rejected that position, finding that the grace period for the one-year limitations period was tolled by Petitioner's properly filed applications for post-conviction relief. D.E. 17. Thus, the Magistrate Judge issued a supplemental order to show cause directing the respondent to file a supplemental response addressing all claims on the merits. *Id.*

In its supplemental response, Respondent failed to address the ineffective assistance of appellate counsel claim on the merits, arguing instead that the claim was unexhausted and procedurally barred because it was not timely presented to the state courts. D.E. 23. The Magistrate Judge rejected that position, finding that petitioner had sufficiently raised the issue in his state petition for habeas corpus, which the Third District Court of Appeal denied on November 22, 1995. Thus, a second supplemental order was issued directing a response to the merits of Claim Four. D.E. 28.

In its second supplemental response, Respondent primarily argued that Perez was not convicted of attempted felony murder, but was instead convicted of attempted first degree murder of a law enforcement officer. Magistrate Judge Sorrentino rejected this argument, as it is belied by the record. Indeed, the jury found Petitioner guilty, specifically, on attempted felony murder, as follows:

> We the jury at Miami, Dade County, Florida this 30th of September, 1993, find the Defendant Henry Perez guilty of the offense of *attempted felony murder*, count I, of a law enforcement officer, so say we all Zorayda Heathcote, foreperson.

D.E. 25, at T440 (emphasis supplied).

The Court agrees with the Magistrate Judge that Petitioner's claim for ineffec-

tive assistance of appellate counsel is not barred by the AEDPA, and is not otherwise procedurally barred, as the claim was presented to, and denied by, the state courts. Accordingly, because the Magistrate Judge correctly noted that Petitioner was in fact convicted of attempted felony murder, and further noting that Petitioner's ineffective assistance claim had merit, the Magistrate Judge appointed the Federal Public Defender to represent the Petitioner on April 25, 2001, and conducted an evidentiary hearing on October 30, 2001.

## II. STANDARD OF REVIEW

The relevant standard for federal habeas review is governed by 28 U.S.C. § 2254(d)(1), which provides:

An application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in State Court ... unless adjudication of the claim—

(1) resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States....

28 U.S.C. § 2254(d)(1); *Breedlove v. Moore,* 279 F.3d 952, 960 (11th Cir.2002).

As the Eleventh Circuit has made clear, "[a] state court decision is 'contrary to' federal law if the state court either (1) applied a rule that contradicts the governing law set forth by Supreme Court precedent, or (2) when faced with materially indistinguishable facts, arrived at a conclusion different from that of the Supreme Court." *Breedlove,* 279 F.3d at 960–61. As the Eleventh Circuit elaborated:

"A state court's decision amounts to an 'unreasonable application' of federal law if it identifies the correct legal rule from Supreme Court case law, but applies that rule in an unreasonable manner to the facts of petitioner's case.... This

could also occur if the state court unreasonably extends, or declines to extend, a governing legal principle (as established by the Supreme Court case law) to a new context.... An unreasonable application of federal law does not refer to an incorrect or erroneous application, but rather to one that is objectively unreasonable."

*Id.,* 279 F.3d at 961.

Here, Petitioner proceeds on the ground that the state courts applied the law concerning ineffective assistance of appellate counsel in an unreasonable manner to the facts of petitioner's case.

## III. DISCUSSION

### A. Whether Failing to Keep the Appeal Alive Constituted Ineffective Assistance of Counsel

Under the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), "[a] defendant claiming ineffective assistance of counsel must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores–Ortega,* 528 U.S. 470, 476, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (citations omitted). The same standard applies to a claim for ineffective assistance of appellate counsel. *See Matire v. Wainwright,* 811 F.2d 1430 (11th Cir.1987).

### 1. Whether the Failure to Keep Perez's Case Alive was "Objectively Reasonable"

 The Constitution imposes one general requirement: that counsel make "objectively reasonable" choices. *Roe v. Flores–Ortega,* 528 U.S. 470, 479, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (citing *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984))

(emphasis added). To determine whether counsel's choices were "objectively reasonable," courts must focus on the "totality of the circumstances," taking account of "all the information counsel knew or should have known." *Roe,* 528 U.S. at 480, 120 S.Ct. 1029 (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052); *Eagle v. Linahan,* 279 F.3d 926, 942 (11th Cir.2001) (same standard for appellate counsel).

Petitioner argues that the failure to keep his appeal alive after the district court's affirmance was not objectively reasonable because counsel: (1) knew that the Supreme Court was re-examining the attempted felony murder doctrine; (2)should have enabled Perez to benefit from a favorable decision; (3) had several avenues available to keep the case alive; (4) pursued none of these avenues; and (5) was being reasonably relied on by Perez to inform him of his options, and to act on them.

### a. *Counsel Had Actual Knowledge That the Attempted Felony Murder Doctrine Was Being Re-Examined*

■ The Court evaluates the reasonableness of counsel's decision not to raise a claim through a lens tinted by the state of the case law at the time counsel was prosecuting the appeal. *See Eagle,* 279 F.3d at 942.

As set forth more fully above, *Amlotte v. State,* 456 So.2d 448 (Fla.1984), established that one element of the offense of attempted felony murder was "an intentional overt act ... which could, but does not, cause the death of another." *Id.,* at 449. The evidence supporting this element at Perez's trial was that Perez placed his car in reverse and injured a police officer who had just opened the door to his car to arrest him. In response to the defendant's motion for a judgment of acquittal and to

objections to jury instructions on this offense, the trial judge expressed doubts about whether the evidence was sufficient, but ultimately sent the charge to the jury. *See* D.E. 25, Trial Tr., 307–08, 328 (noting the Supreme Court Jury Instruction Committee's criticism of the offense).

By the time Rodriguez was briefing Perez's direct appeal, the issues in his case had been certified as issues of "great public importance" for resolution by the Florida Supreme Court by not just one, but *two* Florida district courts of appeal. *See Gray v. State,* 654 So.2d 934, 936 (Fla. 3rd DCA 1994) (certifying "whether the 'overt act' referred to in *Amlotte v. State,* 456 So.2d 448, 449 (Fla.1984), includes one, such as fleeing, which is intentionally committed but is not intended to kill or injure another?"); *Grinage v. State,* 641 So.2d 1362, 1366 (Fla. 5th DCA 1994) (certifying whether an element of the underlying qualifying felony can "also constitute the overt act necessary to prove [attempted felony murder]").

Both district courts invited the Florida Supreme Court to reexamine the continued vitality of *Amlotte.* Certifying several issues of "great public importance," the *Grinage* court took the unusual step of stating that it was its responsibility to "point out to the [Florida Supreme Court] ... whether questioned law should remain in effect."

For its part, the *Gray* court asked the Supreme Court to reexamine an element of the offense and whether a person could commit attempted felony murder even though he never intended to kill or injure anyone. By certifying this issue, *Gray* was questioning whether *Amlotte* should remain the law, as *Amlotte* held that the attempted felony murder doctrine "presumes the existence of the specific intent required to prove attempt." 456 So.2d at 450.

Significantly, in December 1994, the same month Perez's conviction became final, Rodriguez filed a supplemental brief in *Gray* asking the Florida Supreme Court to overrule *Amlotte*, the very decision upon which Perez's conviction for attempted felony murder was predicated.

Indeed, Rodriguez recognized the import of the *Gray* decision in a Florida Bar Journal article Rodriguez published in October 1995: *Attempted Felony Murder— An Improbable Legal Fiction Meets its Demise*. 69 Fla. B.J. 63 (Oct.1995). In his article, Rodriguez noted that *Gray* "placed at issue the validity of the reasoning supporting attempted felony murder." *Id.*, 69 Fla. B.J. at 65. Rodriguez also observed that before *Amlotte* was overruled in May 1995, "[i]t was abundantly clear that the 'logic' of *Amlotte* had begun to fray and unravel." *Id.* at 64. Thus, Petitioner argues, and the Court agrees, that competent counsel should have taken the appropriate steps to make the district court fully aware of the unsettled law, particularly in view of counsel's actual knowledge that the Florida Supreme Court was re-examining the very issues Perez was raising on appeal.[5]

### b. *Counsel's Duty to Get Perez in the Gray and Grinage Pipeline*

■ To ensure that appellate counsel keeps a direct appeal alive, the law requires counsel (1) to consult with the defendant "when there is reason to think . . . that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal)," *Roe*, 528 U.S. at 480, 120 S.Ct. 1029, and (2) to follow a defendant's instruction in that re-

gard. *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("when counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have merit.").

■ Under certain circumstances, counsel's duty to keep a case alive extends to discretionary appeals, when the defendant is reasonably relying on a state-appointed public defender to file this appeal. In *Pressley v. Wainwright*, 540 F.2d 818 (5th Cir.1976),[6] the defendant asked court-appointed counsel, and again the Public Defender for Dade County, to seek discretionary review in the Florida Supreme Court of the affirmance of his conviction by the District Court of Appeal. The request was "favorably received" by counsel. The defendant relied on this response. Yet counsel failed to file the appeal within the deadline. *See id.*, 540 F.2d at 819–21 & n. 5. Thus, the Court held that counsel's "failure to act" frustrated the prisoner's right to petition the Florida Supreme Court, and affirmed a habeas order requiring the State of Florida either to allow a belated application to its Supreme Court, or to grant a new trial. *Id.* at 820–21 & n. 2.

Petitioner argues that upon affirmance of the conviction, counsel should have kept the case alive, or, at the very least, should have informed Perez of his options in order to enable him to protect his rights *pro se*. *See Roe*, 528 U.S. at 480, 120 S.Ct. 1029 (counsel must consult with the defendant "when there is reason to think . . . that a rational defendant would want to

---

5. *See* T. 15, 26–27 (Blumberg testifies that he raises issues that are "percolating" in the courts, and that he is obliged to make the district court aware of other courts which are considering the same issues present in his appeals).

6. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), the Court held that Fifth Circuit precedent predating October 1, 1981 is binding in the Eleventh Circuit.

appeal (for example, because there are non-frivolous grounds for appeal)"); *Stake v. Harlan*, 529 So.2d 1183 (Fla. 2d DCA 1988)(in attorney malpractice context, counsel who is aware of certification to Florida Supreme Court of case materially affecting his client has a "duty" to inform the client of that case, and may be sued for malpractice for failing to do so).

#### c. Counsel Had Several Avenues to Keep Case Alive

In his briefs for Petitioner Perez, Rodriguez failed to mention that *Gray* and *Grinage* were pending in the Florida Supreme Court, following the certification of issues of great public importance by two district courts of appeal. *See* T. 15 (Blumberg testifies that counsel has "an obligation to inform [the appellate court] if there is an issue in your case that's also pending in another case").

Further, counsel could have kept Perez's case alive after the Third District Court of Appeal ruled against him. Specifically, Florida Rule of Appellate Procedure 9.330 authorizes a party to move "for rehearing, clarification, or certification" of a district court of appeal decision, and Rule 9.331(d) authorizes a party to seek rehearing *en banc* of a district court of appeal decision. These motions must be made within 15 days of the order.

Rodriguez testified that he was "not aware" that it was possible to seek rehearing after a PCA. *See* T. 65. He testified

that he was "basically foreclosed" from seeking *en banc* rehearing from a PCA decision. T. 68. In this regard, Rodriguez was wrong, as it is possible to seek rehearing, and/or rehearing *en banc*, of a PCA decision. *See, e.g., Daniels v. State*, 780 So.2d 1042 (Fla. 4th DCA 2001) (on rehearing, issuing opinion in place of per curiam affirmance).[7]

In Perez's case, Rodriguez could have sought rehearing on the very issues on which defendants had prevailed in *Gray* and *Grinage*. In addition, Rodriguez was also wrong in believing that he could not seek rehearing *en banc* of a PCA. A motion for a rehearing *en banc* would have been particularly appropriate in Perez's case, because such a rehearing is permitted when "necessary to maintain uniformity in the [district] court's decisions." Fla. R.App. P. 9.331(d)(1); *Schreiber v. Chase Federal Sav. and Loan Ass'n*, 422 So.2d 911, n. 1 (*en banc*) (Schwartz, J.), *aff'd in part, disapproved in part*, 479 So.2d 90, 92–94 (Fla.1985) (agreeing with district court concerning en banc standards).

*Perez* and *Gray* were issued by two different panels of the Third District Court of Appeal. T. 72–73. *Gray* questioned whether attempted murder can be imputed to a defendant and implicitly questioned *Amlotte*'s validity. 654 So.2d at 936. Perez's PCA affirmance, by contrast, applied *Amlotte* unblinkingly. In view of the obvious lack of uniformity, Rodriguez

---

7. *Accord Franklin v. State*, 718 So.2d 902, 903 (Fla. 5th DCA 1998) (on motion for clarification, rehearing and rehearing en banc, issuing a new panel opinion in place of prior per curiam affirmance without opinion); *Hamilton v. State*, 696 So.2d 914, 915 (Fla. 2d DCA 1997) ("The appellant has filed a motion for rehearing and rehearing en banc, which has convinced this court that a written opinion would be useful. This court withdraws its earlier per curiam affirmance and substitutes the attached opinion, which explains the basis for this affirmance."); *Bakus v. Broward County*, 634 So.2d 641 (Fla. 4th DCA 1993) (granting motion for rehearing and issuing new opinion in place of per curiam affirmance); *Higgins v. State*, 553 So.2d 177, 178 (1st DCA 1989) (granting rehearing from per curiam affirmance of conviction and certifying issue as one of great public importance). *See also* T. 28 ("Q: When you get a PCA decision, can you ask the District Court of Appeals for rehearing? A: (by Blumberg) Yes.").

could have asked the District Court of Appeal to reconcile the opinions *en banc*.

In addition, it is well-settled that the Florida Supreme Court hears appeals involving issues of great public importance when the issue is identical to one it recently involved in another case. *See, e.g., Tucker v. State*, 720 So.2d 209 (Fla.1998) (accepting jurisdiction on a issue certified of great public importance by a District Court of Appeal after resolving the same issue in another case so certified a year earlier); *State v. W.S.L.*, 485 So.2d 421 (Fla.1986) (same).

### d. *Counsel Failed to Pursue the Available Avenues*

The Court finds that Rodriguez's ineffectiveness began with his inexplicable failure to mention in his Perez briefs to the Third District Court of Appeal that *Gray* and *Grinage* were now in the Supreme Court, and that the cases were—among other things—questioning the validity of the attempted felony murder doctrine. Had he mentioned this, there is a reasonable likelihood that the district court would have waited for the conclusion of those cases before deciding *Perez*.[8]

After the Third District Court of Appeal affirmed Perez's conviction in a per curiam decision without opinion ("PCA"), Rodriguez did not seek rehearing, and did not seek rehearing en banc. Similarly, Rodriguez could have sought certification of the "separate overt act" issue certified in *Grinage:* whether the act of Perez's escape could support attempted felony murder. Rodriguez also could have sought certification of the issue certified in *Gray:* whether Perez's act of putting his car in reverse

could be "reasonably understood" to "result" in death. For whatever reason, counsel pursued none of these options, notwithstanding his actual knowledge of the issues pending before the Florida Supreme Court.

### e. *Perez Reasonably Relied On Counsel, and Counsel Failed to Advise Petitioner of His Options*

Moreover, the Court is troubled that neither Rodriguez nor the state Public Defender's Office informed Perez of any of these three options, particularly in view of the state of the law at the time. Rodriguez simply mailed a letter to Perez notifying him of the decision and of his intent to send the file back to the Public Defender's office. Ex. 12.

■ It is well-settled that counsel's breach of norms of legal practice is a factor that courts may consider in determining whether assistance was ineffective. *See Williams*, 529 U.S. at 396, 120 S.Ct. 1495; *Roe*, 528 U.S. at 479, 120 S.Ct. 1029. Here, the pertinent professional norms are contained in the Florida Rules of Professional Conduct, which provide that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Fla. R. Prof. Conduct* 4–1.4(b). *See also Fla. R. Prof. Conduct.* at 4–1.2(a) ("A lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued"); T. 26–27 (Blumberg testifies that counsel's responsibility upon affirmance in the district court is "to let [the

---

8. The State argues that one can presume that the *Perez* panel was aware that *Gray* and *Grinage* were pending in the Supreme Court. However, Rodriguez treated these cases as though they were ordinary district court pre-

cedents. Thus, there is no assurance that the *Perez* panel was aware of the significance of these cases, or their pending procedural posture.

defendant] know what options he has to continue").

Rodriguez's contract with the Public Defender's Office *expressly* required him, if Perez's conviction was affirmed by the District Court of Appeal, "to file a motion for rehearing if such a motion is necessary." Ex. 4, p. 6. The contract also required him to be alert to the possible necessity of promptly seeking discretionary review. *Id.* (noting that, upon affirmance, "the time period for seeking discretionary review . . . will be running"). Thus, Rodriguez was contractually bound with a State entity to seek rehearing, rehearing en banc, or certification of an issue of great public importance if such motions were "necessary." Perez was the third-party beneficiary of this contractual obligation, which counsel failed to fulfill.

The contract Perez signed with the Public Defender's Office, and the Florida Rules of Professional Conduct, imposed obligations on Rodriguez to protect Perez's interests after the district court's affirmance. Perez was entitled to the benefit of Rodriguez discharging these obligations, particularly in light of the flux in Florida case law at the time.

At a minimum, Perez was entitled to rely on his counsel to comply with the basic obligation of letting him know the means by which his objectives could be pursued. Counsel's failure to discharge that which the state and professional norms expected of him demonstrate his ineffectiveness.[9]

### f. *The State of Florida's Response on the Merits*

Respondent essentially argues that Rodriguez was justified in not pursuing a challenge to the attempted felony murder conviction, and was not ineffective, because such a challenge was not properly preserved in the trial court. D.E. 63. In her Report, the Magistrate Judge did not endorse this argument, as it is unfounded.

The record reveals that trial counsel vigorously objected to insufficiency of the evidence supporting the attempted felony murder charge. Defense counsel objected to the jury being instructed on attempted felony murder. D.E. 25, Trial Tr. at 316. Defense counsel pressed the court to grant a judgment of acquittal on this charge, pointing out, among other things, that there was no evidence of "premeditation." *Id.* at 321. Counsel added that the offense was "illogical," and asked the court to have the "courage" to rule that Perez's "overt act" did not constitute a crime—and to let the State "make new law" to establish the contrary. *Id.* at 321–23. The trial court considered the issue at great length, but ultimately ruled against the defendant. *Id.* at 328 (trial court: "I have serious doubts about whether the evidence is sufficient [but] . . . I am going to let it go to the jury"). And, as Rodriguez himself noted, trial counsel's failure to challenge *Amlotte* would not have mattered once the jurisdiction of the Supreme Court was invoked, since "all bets are off" in that court. T. 47. Accordingly, the Court finds that the Magistrate Judge correctly rejected Respondent's argument.

---

9. Ultimately, it does not matter whether Rodriguez or the Public Defender's Office is more to blame for the failure to act.
 See *Pressley*, 540 F.2d at 820, n. 6 (declining to consider whether attorney or the Public Defender's Office bore responsibility for the failure to file the appeal, because either one's omission was "sufficient"). Further, the contract between the Public Defender and Rodriguez shows that *both* were aware of their obligation to protect Perez's rights after an affirmance. See Ex. 4, p. 6. ("[I]t is absolutely imperative that the case file be returned at the designated point in the proceedings, as the time periods for seeking discretionary review or mitigation will be running.").

### g. The Report of the Magistrate Judge

Ultimately, the Magistrate Judge recommended that the Court deny Petitioner's ineffective assistance of counsel claim, relying on Rodriguez' testimony "that the difficulty with requesting rehearing with a *per curiam* affirmance without written opinion or even the citation of cases was that he could not point to any law or fact that the court overlooked or misapprehended." Rep. at 18. The Magistrate Judge further found that Rodriguez "was not ineffective for failing to certify the very question the appellate court certified in *Gray* as the *Gray* case was factually distinguishable." Rep. at 18–19.

The Court disagrees and declines to follow the above findings of the Magistrate Judge. First, there was no "difficulty" in seeking rehearing or rehearing *en banc* from a PCA affirmance. As noted elsewhere in this opinion, Florida case law establishes that it is possible to seek rehearing, or rehearing *en banc,* from a PCA decision, and Rodriguez was simply wrong in believing that he could not seek rehearing. Thus, the Court finds the Magistrate Judge erred in crediting Rodriguez's mistaken beliefs. *See Williams,* 529 U.S. at 395, 120 S.Ct. 1495 (lawyers who failed to act based on mistaken understanding of the law were ineffective).

Second, the Court finds the purported factual differences between the Perez case and the circumstances presented in *Gray* are not that meaningful. In *Gray,* the defendant was fleeing from a robbery in a car; Perez was putting a car in reverse to avoid arrest. Like the appellate court in *Gray,* the trial court in *Perez* felt that it was a stretch to charge the defendant with "attempting" to murder anyone. D.E. 25, Trial Tr. at 317–28.

In any event, any factual differences between the cases are irrelevant for purposes of this analysis, as the factual differences do not justify counsel's failure to act, given that *Gray* and *Grinage* each called into question an element of the offense of attempted felony murder and indeed, the validity of the doctrine altogether. Specifically, *Gray* raised a question concerning what constituted an "overt act" to prove attempted felony murder. The resolution of that question necessarily affected Perez, because any change in the definition of an element of the offense would change what the state would have had to prove to convict him. The Report of the Magistrate Judge does not give due regard to this point.

In addition, Rodriguez himself argued in his Perez reply brief that *Grinage* "squarely" supported the argument he was making on Perez's behalf, yet failed to advise the district court that the case had been certified to the Florida Supreme Court. Ex. 8, pp. 7–9.[10] Once the validity of the doctrine of attempted felony murder was "placed at issue," counsel owed an obligation to his client to put him in a position to benefit from a favorable resolution of this issue.

Thus, the Court concludes that the factual differences between the cases pending before the Florida Supreme Court and the Perez case do not excuse counsel's failure to keep the appeal alive, or to at least

---

**10.** Respondent argues that Perez cannot rely on *Grinage,* on the ground that Perez's *Grinage* argument was not exhausted in the state courts. *See* D.E. 63. However, Perez's *Grinage* argument is simply one aspect of his claim that appellate counsel was ineffective for failing to keep his case alive, a claim Perez has exhausted. *See* D.E. 28 (citing D.E. 12, Ex. L). *See also Vasquez v. Hillery,* 474 U.S. 254, 257–60, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (habeas argument could be heard in federal court because it did not "fundamentally alter" the argument previously presented in state court).

inform his client of his options in order to enable him to protect his rights *pro se.*

Finally, the Magistrate Judge found that counsel's performance was not objectively unreasonable because he "raised good faith arguments on [Perez's] appeal." Rep. at 18. However, although it is true that counsel need not advance every argument, regardless of merit, urged by the appellant, *Evitts,* 469 U.S. at 394, 105 S.Ct. 830, this is not a case where one is second-guessing counsel's selection of arguments.

Rather, in the instant case, Rodriguez actually cited both *Gray* and *Grinage* in Perez's briefs, and argued the cases in "good faith." T. 59–60, 49. Having done so, once *Gray* and *Grinage* reached the Supreme Court, counsel could not abandon his "good faith" arguments. Rodriguez simply had to keep his arguments alive, or at the very least, advise his client that he had the opportunity to do so *pro se. See, e.g., Pressley,* 540 F.2d at 820 (defendant was justifiably relying on counsel "to protect his right to request a writ of certiorari").

Accordingly, after careful consideration of the Petitioner's objections, the Respondent's arguments, the Report of the Magistrate Judge, and the relevant case law, the Court finds that under the unique circumstances presented here, counsel's failure to take the appropriate steps to keep Petitioner's appeal alive in light of the state of the law under reconsideration by the Florida Supreme Court, and counsel's failure to even advise his client of his available options, was objectively unreasonable, for purposes of the Court's *Strickland* analysis.

### 2. *Whether Perez was Prejudiced by Counsel's Failure to Keep His Case Alive*

■ Prejudice is demonstrated if there is a "reasonable probability" that the result would have been different if competent counsel had represented the defendant. *Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

Perez's conviction became final December 2, 1994. On May 4, 1995, Florida eliminated attempted felony murder as an offense in Florida, but the decision did not apply to defendants whose cases were final. *See State v. Gray,* 654 So.2d 552, 554 (Fla.1995) ("we recede from the holding in *Amlotte* that there is a crime of attempted felony murder in Florida. This decision must apply to all cases pending on direct review or not yet final.").

■ The prejudice to Perez that resulted from Rodriguez' lapse is clear: Rodriguez' failure to keep Perez's alive deprived Perez of whatever advantageous turn the law could take. Had Rodriguez kept Perez's appeal alive just a few more months, the case law would have required that *Gray* apply to Perez.[11] Had *Gray* applied, Perez may not be serving a 25–year sentence for attempted felony murder (his most serious conviction). T. 57 (Rodriguez admits that, if the attempted felony murder sentence had been reversed, Perez "would have gotten a much lesser sentence"). Since Rodriguez did nothing to keep Perez's appeal alive, and did not advise his client of his options, the Court finds prejudice exists here.

---

11. *See Smith v. State,* 598 So.2d 1063, 1066 (Fla.1992) ("any decision of this Court announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation, must be given retrospective application by the courts of this state in every case pending on direct review or not yet final.") (citing *Griffith v. Kentucky,* 479 U.S. 314, 320, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)).

Accordingly, the Court must conclude that Petitioner has satisfied the test set forth in *Strickland*, and that Petitioner is entitled to habeas relief based on appellate counsel's ineffective assistance.

### B. *Petitioner's Due Process Claim*

██ The Magistrate Judge's Report recommends denial of Perez's habeas petition on all claims, Rep. at 19, but, while it announces that it will address Claim V, *id.* at 12, it never does. Claim V alleged that the failure of the Florida courts to apply *Gray* to Perez was unconstitutional. The Court disagrees.

In *Gray*, the Florida Supreme Court correctly found that the new rule it announced in that case would only apply "to all cases pending on direct review or not yet final." *Id.*, 654 So.2d at 554. In so ruling, the Florida Supreme Court correctly declined to give its new ruling retroactive effect to otherwise final cases. The State has an interest in the finality of convictions that have survived direct review within the state court system, and hence the distinction between direct and collateral review was appropriate, and the distinction was constitutional. *See, e.g., Brecht v. Abrahamson*, 507 U.S. 619, 634–35, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

Unlike Petitioner's ineffective assistance claim in Claim Four, which implicates his right to counsel on direct appeal, the Court finds that Petitioner is not entitled to habeas relief based on Claim Five.

### IV. *CONCLUSION*

Based on the foregoing, the Court concludes that Petitioner is entitled to habeas relief on his ineffective assistance of appel-

late counsel claim, and to an order directing the State of Florida to grant Perez a belated appeal, or a new trial.[12] Therefore, it is

**ORDERED AND ADJUDGED** that the Petitioner's Objections to the Report of the Magistrate Judge are sustained, and the Report of the Magistrate Judge is rejected. As such, it is

**ORDERED AND ADJUDGED** that the Petition for Writ of Habeas Corpus is hereby GRANTED. It is further

**ORDERED AND ADJUDGED** that the State of Florida is hereby directed to offer Petitioner an appellate proceeding, as if on direct appeal, or a new trial. It is further

**ORDERED AND ADJUDGED** that this case is CLOSED for administrative purposes, and any pending motions are denied as moot.

---

12. Numerous courts have noted that a belated appeal is an appropriate remedy for the ineffective assistance of appellate counsel. *See, e.g., Mason v. Hanks*, 97 F.3d 887, 902 (7th Cir.1996); *Castellanos v. United States*, 26 F.3d 717, 720 (7th Cir.1994); *Baker v. Kaiser*, 929 F.2d 1495, 1500–01 (10th Cir.1991); *Pressley v. Wainwright*, 540 F.2d 818 (5th Cir. 1976).